# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RICHARD RODRIGUEZ-SOTO,

                            1:17-cv-11464-NLH

          Plaintiff,

                            **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S. WHITE HORSE PIKE
AUDUBON, NJ 08106

     *On behalf of Plaintiff*

GREGG WARNER MARSANO
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

     *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] under Title II of the Social Security

---

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number of

Act.  42 U.S.C. § 423, et seq.  The issue before the Court is

whether the Administrative Law Judge ("ALJ") erred in finding

that there was "substantial evidence" that Plaintiff was not

disabled at any time since his alleged onset date of disability,

June 7, 2011.  For the reasons stated below, this Court will

affirm that decision.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On December 30, 2013, Plaintiff, Richard Rodriguez-Soto,

protectively filed an application for DIB,[2] alleging that he

became disabled on June 7, 2011.[3]  Plaintiff claims that he can

no longer work as a meat cutter, groundskeeper, or union

representative because of his severe impairments of coronary

---

quarters of insured employment has suffered such a mental or
physical impairment that the claimant cannot perform substantial
gainful employment for at least twelve months.  42 U.S.C. § 423
et seq.

[2] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to file
for benefits.  That date may be earlier than the date of the
formal application and may provide additional benefits to the
claimant.  See SSA Handbook 1507; SSR 72-8.  At the same time he
filed his DIB claim, Plaintiff also protectively filed for
Supplemental Security Income ("SSI") under Title XVI.
Plaintiff's claim for SSI was approved as of December 24, 2013.
As discussed in detail below, Plaintiff argues that the denial
of his DIB claim, for which he must show he was disabled as of
the date he was last insured – September 30, 2013 – makes no
sense because, based on the same evidence, he was deemed
disabled for purposes of SSI just three months later.

[3] The original date Plaintiff claimed he became disabled was on
July 31, 2010.  He amended his disability onset date to June 7,
2011 at the hearing before the ALJ.

heart disease, hypertension, and obesity.

Plaintiff's initial claim was denied on June 13, 2014 and upon reconsideration on October 27, 2014. Plaintiff requested a hearing before an ALJ, which was held on January 11, 2017. On April 5, 2017, the ALJ issued an unfavorable decision. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on September 20, 2017, making the ALJ's April 5, 2017 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a

3

conclusion." Id.  The inquiry is not whether the reviewing

court would have made the same determination, but whether the

Commissioner's conclusion was reasonable.  See Brown v. Bowen,

845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its

totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984).  "[A] court must 'take into account whatever in the

record fairly detracts from its weight.'" Schonewolf v.

Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks

v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th

Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.

474, 488 (1951)).

The Commissioner "must adequately explain in the record his

reasons for rejecting or discrediting competent evidence."

Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing

Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third

Circuit has held that an "ALJ must review all pertinent medical

evidence and explain his conciliations and rejections." Burnett

v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).

Similarly, an ALJ must also consider and weigh all of the non-

medical evidence before him.  Id. (citing Van Horn v. Schweiker,

717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d

700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the

Commissioner's reasoning is indeed essential to a meaningful

court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review,

a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."

Williams, 970 F.2d at 1182. However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy

itself that the Commissioner arrived at his decision by

application of the proper legal standards. Sykes, 228 F.3d at

262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

### B.    Standard for DIB

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if her physical or mental impairments are of such
severity that she is not only unable to perform her past
relevant work, but cannot, given her age, education, and work
experience, engage in any other type of substantial gainful work
which exists in the national economy, regardless of whether such
work exists in the immediate area in which she lives, or whether
a specific job vacancy exists for her, or whether she would be
hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations[4] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1.    If the claimant currently is engaged in substantial
gainful employment, she will be found "not disabled."

_____

[4] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  Even though the ALJ issued
her decision after that effective date, neither party argues
that any amendments affect the issues presented in Plaintiff's
appeal.

2.    If the claimant does not suffer from a "severe
      impairment," she will be found "not disabled."

3.    If the severe impairment meets or equals a listed
      impairment in 20 C.F.R. Part 404, Subpart P, Appendix
      1 <u>and</u> has lasted or is expected to last for a
      continuous period of at least twelve months, the
      claimant will be found "disabled."

4.    If the claimant can still perform work she has done in
      the past ("past relevant work") despite the severe
      impairment, she will be found "not disabled."

5.    Finally, the Commissioner will consider the claimant's
      ability to perform work ("residual functional
      capacity"), age, education, and past work experience
      to determine whether or not she is capable of
      performing other work which exists in the national
      economy.  If she is incapable, she will be found
      "disabled."  If she is capable, she will be found "not
      disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

    This five-step process involves a shifting burden of proof.

<u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d

1150, 1153 (3d Cir. 1983).  In the first four steps of the

analysis, the burden is on the claimant to prove every element

of her claim by a preponderance of the evidence.  <u>See</u> <u>id.</u>  In

the final step, the Commissioner bears the burden of proving

that work is available for the Plaintiff: "Once a claimant has

proved that he is unable to perform his former job, the burden

shifts to the Commissioner to prove that there is some other

kind of substantial gainful employment he is able to perform."

<u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); <u>see</u> <u>Olsen v.</u>
<u>Schweiker</u>, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

At step one, the ALJ found that Plaintiff had not engaged
in substantial gainful activity since the alleged onset of
disability.  At step two, the ALJ found that Plaintiff's
impairments of coronary heart disease, hypertension, and obesity
were severe.  At step three, the ALJ determined that Plaintiff's
severe impairments or his severe impairments in combination with
his other impairments did not equal the severity of one of the
listed impairments.  The ALJ then determined that Plaintiff's
residual functional capacity ("RFC") permitted him to perform
his past relevant work as a union representative and
groundskeeper (step four).[5]

Plaintiff argues that the ALJ erred in several ways.
First, Plaintiff argues that his due process rights were
violated when the ALJ, who conducted the hearing via
videoconferencing, had an off-the-record, ex-parte conversation
with an agency medical consultant, which tainted the entire

---

[5] Because the ALJ determined at step four that Plaintiff was
capable of performing his past relevant work, the
ALJ did not need to reach step five in the sequential step
analysis.  <u>Benjamin v. Commissioner of Social Security</u>, 2019 WL
351897, at *4 n.9 (D.N.J. 2019) (citing <u>Valenti v. Commissioner
of Social Sec.</u>, 373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20
C.F.R. § 404.1520(b)-(f)).

process.  Second, Plaintiff argues that the ALJ did not properly consider the medical evidence, especially because the administration found him to be totally disabled for SSI benefits as of December 24, 2013, which is only three months after the date Plaintiff must establish that he is disabled for DIB benefits.  Third, Plaintiff argues that the ALJ's determination that Plaintiff was capable of performing his past relevant work was in error because those jobs did not count as substantial gainful activity, and the union representative job was not the job he actually performed in the past.  The Court will address each argument in turn.

**1.  Whether Plaintiff's due process rights were violated**

The ALJ presided over Plaintiff's hearing via videoconferencing from the SSA's National Hearing Office in Chicago, Illinois, and Plaintiff and his counsel attended at the South Jersey Hearing Office in Pennsauken, New Jersey.  When Plaintiff and counsel walked into the hearing room, the ALJ had been talking with an agency medical advisor, Dr. Thomas Charles Passo, M.D., a cardiologist.  The transcript reveals that when Plaintiff and his counsel came into the room, the ALJ apologized for running so late,[6] and said: "I had . . . asked a doctor, based on the records we had, what his bottom line was, with the

---

[6] Technical difficulties at the National Hearing Office caused the delay in the hearing. (R. at 31.)

9

myocardial infraction history. . . . He has the same records as
I have.  They stop at 2014." (R. at 28.)

The ALJ and Plaintiff's counsel then discussed that the SSA
granted Plaintiff's SSI benefits claim as of December 24, 2013,
and the only claim before the ALJ to consider was Plaintiff's
DIB claim, for which he must establish disability as of
September 30, 2013, which is the date he was last insured for
DIB.  (R. at 28-29.)  Counsel pointed out that the total
disability determination for SSI was only "two months" before
the relevant disability date for DIB, and "I heard your
discussion with the doctor."  (R. at 29.)  At the hearing, Dr.
Passo testified that Plaintiff had no severe impairments and no
cardiac limitations.  (R. at 52.)

Plaintiff argues that the ALJ acted improperly by
discussing the matter with a prospective witness prior to the
hearing, especially here where the full extent of the
conversation is unknown.  Plaintiff argues that without knowing
the full extent of the conversation, Plaintiff can only guess as
to what was discussed between the ALJ and Dr. Passo.  Because
this ex-parte conversation should have never taken place,
Plaintiff contends that he did not have a fair hearing, the
ALJ's decision was tainted, and the matter should be remanded.

In response, Defendant argues that Plaintiff's counsel
heard the conversation between the ALJ and Dr. Passo, despite

arguing now that he did not.  Defendant further argues that

counsel had the opportunity to question Dr. Passo at the hearing

about his testimony, as well as about whatever conversation he

had with the ALJ off the record.  Defendant argues that counsel

should have raised the issue at the hearing, and because he has

only presented it now on appeal, Plaintiff has waived his claim

that his due process rights were violated.

The Court finds that Plaintiff has not shown that his due

process rights were violated such that remand is warranted, but

not exactly for the reasons argued by Defendant.  As a general

principle, Social Security administrative hearings are subject

to the requirements of due process, <u>Lippincott v. Commissioner

of Social Sec.</u>, 982 F. Supp. 2d 358, 385 (D.N.J. 2013) (citing

<u>Richardson v. Perales</u>, 402 U.S. 389, 401–02 (1971)) (other

citation omitted), and any hearing afforded a Social Security

disability claimant must be full and fair, <u>Meyler v.

Commissioner of Social Sec.</u>, 238 F. App'x 884, 889 (3d Cir.

2007) (citing <u>Ventura v. Shalala</u>, 55 F.3d 900, 902 (3d Cir.

1995)).  Contrary to Defendant's argument, unlike an ordinary

evidentiary issue,[7] a claimant does not waive a claim that his

---

[7] <u>See, e.g.</u>, <u>Bolivar v. Commissioner of Social Security</u>, 2018 WL
5294515, at *3 (D.N.J. 2018) ("Plaintiff also complains that, at
the hearing, counsel did not have the opportunity to cross-
examine the vocational expert. Plaintiff concedes, however: "The
attorney at the hearing did not fight this abuse of discretion."
Having failed to raise this objection at the hearing before the

11

constitutional rights were violated by the Commissioner if he does not raise such a claim during the administrative proceeding. This is because "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." Penner v. Schweiker, 701 F.2d 256, 260 (3d Cir. 1983) (explaining that § 405(g) did not act as a bar to the resolution of constitutional questions raised by the claimant when seeking review of the Secretary's decision, and that constitutional violation claims confer subject matter jurisdiction under 28 U.S.C. § 1331 and are cognizable independent of any claims arising under 42 U.S.C. § 405(g)).

A claimant must show some prejudice, however, to establish that his due process rights were violated. See, e.g., Mayes v. Social Sec. Admin., 190 F. App'x 183, 186 (3d Cir. 2006) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (noting that an SSI claimant has a due process right to a hearing that is fundamentally fair, but despite the plaintiff arguing his due process rights were violated by not having counsel at his hearing before the ALJ, plaintiff did not show he suffered any prejudice as a result); Swanson v. Commissioner of Social Security, 2017 WL 825199, at *5 (D.N.J. 2017) (citing Harrison

---

ALJ in the first instance, this argument has been waived on appeal.").

v. Commissioner of Social Sec., 569 F. App'x 874, 878–79 (11th Cir. 2014) (finding that an ALJ has a basic duty to develop a full and fair record, but "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record," and "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice").

In this case, even if the Court assumes that the ALJ and Dr. Passo had an extensive ex-parte conversation about Plaintiff's disability claim, the Court does not find that Plaintiff's due process rights were violated and a remand is necessary. The ultimate determination this Court must make is whether substantial evidence supports the ALJ's decision, and in order to satisfy that standard, the ALJ must have justified her conclusions by citing to the evidence in the record.[8] Thus, regardless of the conversation between the ALJ and Dr. Passo, it is the analysis contained in the ALJ's decision that controls. Obviously, if the ALJ cited to the ex-parte conversation with Dr. Passo to support her determination that Plaintiff was not

---

[8] See Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence.").

disabled, it would be a fair question both as to whether the ALJ's decision was based on substantial evidence and whether Plaintiff's due process rights were violated. But even if the ALJ was influenced in some measure by her ex-parte conversation with Dr. Passo, as long as the ALJ's decision stands alone as supported by the record evidence, their discussion does not violate Plaintiff's constitutional rights.[9]

Accordingly we turn to Plaintiff's second basis for appeal, that is whether the ALJ properly evaluated the record evidence in making the determination that Plaintiff retained the RFC to perform his past relevant work.

### 2. Whether the ALJ erred in consideration of the medical evidence in determining Plaintiff's RFC

The ALJ found that Plaintiff retained the RFC[10] to perform the full range of medium work. See 20 C.F.R. § 404.1567 ("To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy."). "Medium work involves lifting no more

---

[9] The Court does not condone ex-parte conversations between an ALJ and an agency witness, and such conversations must be avoided. The Court recognizes, however, that the mechanics of the ALJ being in the same room as Dr. Passo while the problems with the videoconference were being resolved, rather some nefarious collusion between the ALJ and Dr. Passo, appears to have led to some preliminary discussions about Plaintiff's claim.

[10] The RFC reflects "what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).

than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." Id.

In coming to this conclusion, the ALJ recounted Plaintiff's medical records (R. at 14), and noted that his physicians found no significant exertional limitations, the clinical findings showed no significant restrictions, and he was provided with only conservative care (R. at 15). The ALJ also referred to Plaintiff's obesity and how it could affect his overall condition, but noted that the medical evidence during the relevant time period reported none. (Id.)

With regard to Dr. Passo's testimony at the hearing, the ALJ noted that Dr. Passo testified that Plaintiff's physicians showed no exertional limitations and only conservative treatment. (R. at 14.) The ALJ recounted that Dr. Passo testified that after the date of last insured, September 30, 2013, Plaintiff "has years with no medical treatment documented followed by a normal ECHO. His only limitations would come from his impairments, considered in combination with his obesity. Dr. Passo opined that the claimant is capable of activities up to the medium exertional level." (R. at 14-15.)

Plaintiff argues that even though his physicians did not specifically find any exertional limitations, they did not

affirmatively state that he could frequently lift 25 pounds and occasionally lift 50 pounds as required by the medium work level. Plaintiff further argues that the ALJ did not properly consider that obesity is a medical impairment. Finally, Plaintiff argues that the finding he was totally disabled as of three months later for SSI benefits calls into doubt the ALJ's contrary conclusion.

The Court is not persuaded. First, the lack of statements by Plaintiff's medical providers as to his exertional limitations does not support a claim of inability to perform medium work, but rather the converse. A physician who examines a healthy individual and does not explicitly state that the person has no exertional limitations does not translate into a finding that the person is incapable of any physical activity. Instead, the lack of any findings as to limitations suggests that the person has none. Such is the case here. Without any medical evidence regarding Plaintiff's physical exertional limitations, his doctors' silence as to those kinds of limitations supports the ALJ's conclusion that Plaintiff is capable of medium level work.

Second, with regard to the ALJ's assessment of Plaintiff's obesity, Plaintiff points to the transcript of the hearing where Plaintiff's counsel, while participating in the questioning of Dr. Passo, challenges the ALJ's statement that obesity, while a

16

factor to be considered in combination with other impairments,
is not by itself a medical impairment. (R. at 59-60.)  The ALJ
disagreed with Plaintiff's counsel on that issue. (R. at 60.)

In the ALJ's decision, she cited to SSR 02-1p and explained
that she was required to consider the combined effects of
Plaintiff's obesity with his other impairments.[11]  The ALJ found
that the medical evidence did not support any physical
limitations lower than the medium exertional level.  Thus,
regardless of whether the SSA considers obesity to be a stand-
alone medical impairment, no medical evidence demonstrated that
Plaintiff's obesity – alone or in combination with his other

---

[11] SSR 02-1p explains:

> Can We Find an Individual Disabled Based on Obesity Alone?
>
> If an individual has the medically determinable impairment
> obesity that is "severe" as described in question 6, we may
> find that the obesity medically equals a listing. (In the
> case of a child seeking benefits under title XVI, we may
> also find that it functionally equals the listings.)  We
> may also find in a title II claim, or an adult claim under
> title XVI, that the obesity results in a finding that the
> individual is disabled based on his or her residual
> functional capacity (RFC), age, education, and past work
> experience.  However, we will also consider the possibility
> of coexisting or related conditions, especially as the
> level of obesity increases.

At the hearing, Plaintiff's counsel referred to a "POMS" or
"Program Operations Manual System" to support his argument that
disability can be found based on obesity by itself. (R. at 60.)
The ALJ countered that a POMS is not controlling on the ALJ in
the five-step sequential analysis. (Id.)  The Court does not
need to address this issue to resolve Plaintiff's appeal.

impairments – caused more than minimal physical exertional limitation.  The ALJ did not err in this analysis.

Third, the Court does not find that the ALJ's decision is erroneous based on Plaintiff's argument that because he was determined to be totally disabled for SSI as of December 24, 2013, it is incongruous for the ALJ not to find him disabled as of September 30, 2013, when there is no new evidence in the three months in between.  At the hearing, the ALJ considered that argument, and explained that the decision for SSI under Title XVI is not binding on the ALJ in considering Plaintiff's claim for DIB under Title II, to which statement Plaintiff's counsel did not disagree.  (R. at 29.)  Plaintiff's counsel explained that the SSI decision was based on a finding that Plaintiff was limited to light work, which, because of his advanced age of 55 years and his vocational history, rendered him disabled as of December 24, 2013.  (R. at 33, 38.)  The ALJ then acknowledged that there was an inconsistency presented by Plaintiff's DIB claim being denied at the initial level for insufficient evidence but the same evidence supported his SSI claim.  (R. at 46.)  Instead of finding persuasive the approval of Plaintiff's SSI claim on his DIB claim, however, the ALJ was perplexed as to how the SSI claim had been approved.  (Id.)

The ALJ properly considered the impact of Plaintiff's approved SSI claim in the analysis of his DIB claim.  As

Plaintiff concedes, the ALJ was not required to adopt the finding of Plaintiff's SSI claim, particularly because the issue for Plaintiff's DIB was whether he was totally disabled as of the date of his last insured, rather than the date of his application.[12]  Moreover, the ALJ discussed this inconsistency in her decision (R. at 14), and supported the RFC analysis with the appropriate record evidence, as set forth above.  Even though Plaintiff argues that the ALJ should have been persuaded by the approval of his Title XVI claim, the ALJ properly supported her decision in not finding the Title XVI approval compelling.

### 3. Whether the ALJ erred in considering Plaintiff's past relevant work

At step four, if the ALJ finds that the claimant can still perform work he has done in the past despite his severe impairments, he will be found "not disabled."  The ALJ concluded that Plaintiff's RFC to perform the full range of medium level work encompassed Plaintiff's past relevant work as a groundskeeper and a union representative.

Plaintiff argues that his position of a groundskeeper does not qualify as past relevant work because he did not make enough earnings at that job to deem it substantial gainful activity

---

[12] "The SSDI and SSI programs share many concepts and terms, however, there are also many very important differences in the rules affecting eligibility and benefit payments." https://www.ssa.gov/redbook/eng/overview-disability.htm.

("SGA").  Plaintiff further argues that the union representative job is not the job he actually performed.  Because the ALJ did not properly find that he was capable of performing his past relevant work, she erred at step four.

The Court does not agree.  Under the regulations, past "work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity."  20 C.F.R. § 404.1565.  Work may be substantial gainful activity "even if it is done on a part-time basis."  20 C.F.R. § 404.1572(a).  Plaintiff reported that he earned $1,435 a month working as a groundskeeper from 2007 through 2008, which monthly income exceeded the SGA level for 2007 ($900 per month) and 2008 ($940 per month).[13]  Thus, Plaintiff's groundskeeper job qualifies as past relevant work.

As for the union representative job, it was a major topic of discussion at the hearing.  Plaintiff testified that while he was a meat cutter, he attempted to unionize his coworkers, but he was fired for that activity.  After that for about a year, he worked for the union.  (R. at 40-41.)  The vocational expert at the hearing initially classified the job as a union labor representative (DOT 187.167.018), which is at the sedentary

---

[13] These figures are cited in Defendant's brief with citation to the record and the governing regulations.  Plaintiff does not refute these numbers.

level and classified at the same Specific Vocational Preparation ("SVP") level as a lawyer (SVP 8), but she reconsidered that classification once she heard more about Plaintiff's duties for the union. Plaintiff explained that he distributed union literature to various workers on their breaks by walking up and down rows, and the VE considered that job to be more like a recruiter (DOT 166.267-026) (SVP 5). (R. at 44.)

Plaintiff argues that despite the VE's testimony that Plaintiff's job working for the union was not a union labor representative but rather more like a recruiter, the ALJ found that Plaintiff was capable of returning to the job as a union labor representative, which was not his past relevant work.

The ALJ's reference to Plaintiff's past relevant work as a union labor representative is technically an error because it is evident from the record that he did not perform that job as it is defined by the Dictionary of Occupational Titles. The Court finds this error to be harmless, however, because putting aside the job's title, Plaintiff worked for the union at the appropriate SGA level, and Plaintiff's RFC rendered him capable of still performing that job as he performed it in the past. Thus, whatever the name of Plaintiff's job for the union, that job classifies as past relevant work he could perform, which

satisfies the ALJ's burden at step four.[14]

### III. Conclusion

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  The Court finds in this case that Plaintiff's due process rights were not violated, and the ALJ's determination that Plaintiff was not totally disabled as of June 7, 2011 is supported by substantial evidence.  The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date:  March 26, 2019                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

[14] It is worth noting here that while the ALJ did not reach step five, at that point the ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy.  See Reed v. Commissioner of Social Security, 2018 WL 5617549, at *6 (D.N.J., 2018) (citing Nalej v. Berryhill, 2017 WL 6493144, at *11 (D.N.J. 2017) (citing 20 C.F.R. § 416.966(b))(explaining that SSA regulations provide that work exists in the national economy when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, he did not err as to the third job, and that finding as to only one job was sufficient to support his determination that the plaintiff was not disabled)).